CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2016 AUG 19 PM 1:36

DEPUTY CLERK _____

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| JUANITA IRENE SANTOS, | § § § | |
| Plaintiff, | § § | |
| v. | § | Civil Action No. 1:15-CV-230-BL |
| CAROLYN COLVIN,<br>Commissioner of the Social Security<br>Administration, | § § § § § | |
| Defendant. | § § | |

## MEMORANDUM ORDER AND OPINION

Pursuant to 42 U.S.C. § 405(g), Juanita Santos seeks judicial review of the decision of the Commissioner of Social Security, who denied her application for disability insurance benefits and widow's benefits under Title II of the Social Security Act. This case was assigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties have consented to proceed before a United States Magistrate Judge. (Doc. 5). After considering the pleadings, briefs, and administrative record, this Court finds that the decision of the Commissioner is not based on legal error, is supported by substantial evidence, and is therefore affirmed and Santos' case dismissed.

### I. STATEMENT OF THE CASE

Santos filed an application for DIB and widow's benefits on October 1, 2013, alleging impairments that were disabling as of September 26, 2013. That application was denied initially on January 13, 2014 and again on reconsideration on May 14, 2014. Santos requested a hearing, which was held before an Administrative Law Judge on March 11, 2015. The ALJ issued a decision on May 29, 2015 finding Santos not disabled.

Specifically, the ALJ found during step one that she had not engaged in substantial gainful activity since September 26, 2013. (Doc. 13-3, 33). At step two, the ALJ found Santos had the severe impairments of degenerative disk disease of the lumbar spine, bursitis and impingement of the right shoulder - status post right shoulder arthroscopy, major depressive disorder – recurrent and severe without psychotic features, pain disorder, post-traumatic stress disorder, and borderline intellectual functioning. (Doc. 13-3, 33). At step three, the ALJ found that Santos "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments...." (Doc. 13-3, 34). The step three analysis continued, with the ALJ finding that Santos

> has the residual functional capacity to lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; sit, stand or walk (individually or in combination) throughout an 8-hour workday; and otherwise perform the full range of light work, except as follows: She can only occasionally climb ladders, scaffolds, ropes, ramps, or stairs. She can only occasionally work overhead with her right (dominant) upper extremity. She can frequently stoop, kneel, crouch, or crawl, and she can perform occupations involving detailed, but not complex, instructions.

(Doc. 13-3, 37). At step four, the ALJ concluded that Santos was able to return to her past relevant work, and was therefore not disabled. (Doc. 13-3, 45).

Santos applied to the Appeals Council, which denied review on October 25, 2015. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[t]he Commissioner's final decision includes the Appeals Council's denial of [a claimant's] request for review.")

## II. FACTUAL BACKGROUND

According to her pleadings, testimony at the administrative hearing, and the administrative record, Santos was 58 years old and widowed at the time of the administrative

hearing. She did not return to school after completing the 8th grade and looked into seeking a GED but decided it was beyond her capabilities. She sustained one injury while working moving boxes of oil and gas filters, but most work history was in janitorial and housekeeping roles.

### III. STANDARD OF REVIEW

A person is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423 (d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b).

To evaluate a disability claim, the Commissioner follows a "five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the Court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton*, 209 F.3d at 452.

The Court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the Court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton*, 209 F.3d at 452.

## IV. DISCUSSION

Santos raises two issues on appeal. She claims that the ALJ erred by failing to find her intellectually disabled and by failing to incorporate into the RFC limitations assessed in medical opinions.

### A. Intellectual Disability and Listing 12.05

Santos argues she met the criteria set out for an intellectual disability impairment listed at § 12.05 in appendix 1 of the Social Security regulations and the ALJ therefore erred by not finding her disabled at step three. The Social Security regulations provide that "intellectual disability refers to significantly subaverage general intellectual functioning with deficits in

adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22" and goes on to list four scenarios in which those requirements are satisfied. 20 C.F.R. § 404, subpt. P, app. 1 § 12.05. As noted above, a claimant bears the burden of proof at step three, and the ALJ's decision must be affirmed if supported by anything more significant than a scintilla of evidence. *Audler*, 501 F.3d at 448; *Newton*, 209 F.3d at 452.

Santos would attempt to carry that burden by showing that her impairment is described by the third scenario – paragraph C: "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function." 20 C.F.R. § 404, subpt P, app. 1 § 12.05. She points to an IQ test administered in April of 2014 with a verbal comprehension index of 66 and any of her severe impairments, claiming that the severe impairment standard and "additional and significant work-related limitation or function" are synonymous and equivalent.[1] (Doc. 16, 6-7) (citing Doc. 14-1, 68). Section 12.00 of Appendix 1 provides commentary and instruction and states that

> The structure of the listing for intellectual disability (12.05) ... contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. ... For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s)....

So, a claimant has to show they meet the requirements of both 12.00 and one of the 12.05 scenarios, including a deficit in adaptive function during the developmental period. *Id.*

---

[1] Santos cites to 65 Fed. Reg. 5074ff for the proposition that the severe impairment standard is equivalent to the additional impairment required by 12.05. This court can locate no source with such a citation, and 65 Fed. Reg. 5074 appears to refer to ERISA reporting. However, 12.00 of the listings in Appendix 1 does support this proposition.

The qualifying IQ score is also required by 12.05, and 12.00(D)(6) provides that "[i]n cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." The verbal component of Santos' score would qualify under 12.05(C) if all other elements were shown, including a deficit in adaptive function during the developmental period as required by 12.00.

"Adaptive functions include 'cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [one's] grooming and hygiene, using telephones and directories, and using a post office[.]'" *Arce v. Barnhart* 185 F. App'x 437, 438 (5th Cir. 2006) (quoting 20 C.F.R. § 404 subpt. P, app. 1 § 12.00(C)(1)). Santos refers to the DSM-5 which sets out three categories of adaptive function: social, practical, and academic, and she further asserts that the record supports finding a deficit in academic adaptive function before the age of 22. (Doc. 16, 8) (citing *Diagnostic and Statistical Manual of Mental Disorders*, 37 (5th ed. text rev. 2013)).

She specifically refers to the results of the IQ test, her failure to obtain a GED, and the result of a mental evaluation at the age of 55 which assessed her "judgment in terms of answering comprehension questions [as] fair to poor." The Commissioner, in contrast, notes her ability to "prepare her own meals, perform light housework, drive a car, shop in stores, and handle her own finances." Neither of these sets of facts indicates definitively academic adaptive deficits before the age of 22, but the role of this court is not to reweigh the evidence. Santos' goal is to show that the ALJ committed a legal error in failing to consider explicitly 12.05(C) in the text of the decision, and that such error was prejudicial *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). So long as "the substantial rights of a party have not been affected[,]" any

alleged defects are harmless since "[p]rocedural perfection in administrative proceedings is not required[.]" *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998) (quoting *Mays*, 837 F.2d at 1364). Phrased differently, Santos must show "evidence that would have been adduced and that could have changed the result[,]" not only that the ALJ should have considered 12.05. *See Brock v. Chater*, 84 F.3d 726, 729 n.1 (5th Cir. 1996). Without a more definitive showing of evidence of adaptive deficit manifesting prior to the age of 22, Santos has not met this burden.

As Santos bears the burden to prove entitlement to Social Security benefits, she must show not that there might be some evidence that could be interpreted differently, but that correcting this alleged legal error would likely produce a different outcome. *Id.* Although, as the Commissioner concedes, the verbal component of the IQ test and significant other impairments could be considered under 12.05(C), Santos has failed to show deficits in adaptive function were present during the developmental period such that there would not be substantial evidence supporting a finding to the contrary. Some evidence that Santos struggled academically when younger is not sufficient to prove all three elements of the listed impairment such that failure to discuss intellectual disability is reversible legal error. Although it might be advisable for the ALJ to explicitly address 12.05 when doing so for 12.04 and 12.06, any legal error in failing to do so in this case is harmless.

### B. Limitations from Medical Opinions

Santos also argues that opinions from Dr. Taylor, the administration's examining psychologist, and Dr. Perry, her treating physician, were given insufficient weight and implicitly rejected by way of differences between their limitations assessed and the RFC determined by the ALJ. The opinion of an acceptable treating medical source is given great weight. *Newton*, 209 F.3d at 453. "Acceptable medical source refers to one of the sources described in [20 C.F.R.] §

7

404.1513(a) who provides evidence about [the claimant's] impairments. It includes treating sources, nontreating sources, and nonexamining sources." 20 C.F.R. § 404.1502.

"[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of [a] treating physician only if the ALJ performs a detailed analysis for the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton*, 209 F.3d at 453. *Newton* ensures that the opinion of a "non-specialty medical expert who had not examined the claimant" is not given more weight than that of a treating or examining physician. *Id.*

Santos argues that as the ALJ assigned significant weight to the opinion of Dr. Taylor, it is reversible error for the ALJ to find an RFC that differs in some respects to the opinion. (Doc. 16, 11). Specifically, she argues that the RFC finding that she can perform "'detailed, but not complex, instructions' does not account for the social functioning and adaptation deficits found by Dr. Taylor, nor does it address her significantly impaired reading, comprehension, and math skills." (Doc. 16, 11). Although Santos claims that the RFC finding is sufficiently in conflict with the opinion offered by Dr. Taylor, she does not show that a restriction to non-complex instructions is incompatible with the medical opinion. Rather, Santos relies on a reading of regulations and case law that would require an ALJ to detail every assessment from every medical source as to each potential limitation, compare them to each other, explain which parts of which opinions were fully adopted, which parts of which opinions were fully rejected, and state the cohesive RFC of the claimant, all explicitly in the text of the ALJ's decision. (Doc. 16, 17).

However, in doing so, Santos relies upon *Loza*, where an ALJ rejected the medical opinion of a treating physician, and Dr. Taylor is not such a treating physician. (Doc. 16, 12)

8

(citing *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000)). Furthermore, the Fifth Circuit has held that an ALJ need not list specifically evidence accepted and rejected when making the decision. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Finally, it is not error for an ALJ to consider all available medical opinions and synthesize them into a single RFC determination, as occurred in this case. The ALJ assigned "significant weight" to "the opinions of the State agency medical consultants and the initial and reconsideration determinations[,]" not only to the opinion of Dr. Taylor. The agency medical opinions, as a whole, were given significant weight and incorporated into the RFC, and no error occurred because some portion of one of those opinions may be read as divergent from the consensus of the state consultants as a whole.

Santos finally argues that the opinion of her treating physician, Dr. Perry, was not fully incorporated into the RFC. (Doc. 16, 16). The Commissioner does not contest this, but notes that the ALJ found Dr. Perry's opinion inconsistent with the record as a whole and gave lengthy analysis and reasoning for discounting the opinion of Dr. Perry. (Doc. 17, 20). In part, the ALJ stated

> I considered the opinions of Dr. Perry but ultimately gave them very little weight. Dr. Perry apparently relied quite heavily on the subjective report of symptoms and limitations provided by Ms. Santos and seemed to accept uncritically as true most, if not all, of what Ms. Santos reported. Yet, as explained elsewhere in this decision, good reasons exist to question the reliability of Ms. Santos' subjective complaints. The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom she sympathizes, for one reason or another. Another reality is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor-patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations in which the opinion in question departs substantially from the rest of the evidence, as in the current case.

(Doc. 13-3, 44). The ALJ also went into detail about inconsistencies between the opinion of Dr. Perry and her own treatment notes at the time, which when considered with the evidence from

other medical sources, led the ALJ to give that opinion little credence in crafting the RFC. *Id.* Such a decision is encouraged by the regulations. (Doc. 13-3, 41-42); SSR 96-2p ("A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion. ... If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight.")

Santos is correct in noting that the ALJ would be required to analyze the opinion of Dr. Perry even more thoroughly and exactly before completely dismissing it under *Newton*. (Doc. 16, 17). However, the ALJ did not reject or give no weight to the opinion of Dr. Perry, only noted that it was given little weight because of the numerous inconsistencies with both Dr. Perry's own notes as well as the other medical opinions. (Doc. 13-3, 44). "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton*, 209 F.3d at 452. Therefore, the ALJ's RFC assessment is legally sound and supported by substantial evidence.

## V. CONCLUSION

Considering the foregoing, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

Dated August  19 , 2016.

E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE